UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **United States of America** | No. 24-CR-10035-JEK |
| v. | |
| **James Lee** | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant James Lee submits this memorandum to assist the Court in sentencing. To determine the appropriate sentence, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a) …" *Nelson v. United States*, 555 U.S. 350, 351 (2009). Mr. Lee urges the Court to impose a sentence of time served, almost 19 months of incarceration, as "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). *United States v. Kimbrough*, 552 U.S. 85 (2007); *United States v. Booker*, 543 U.S. 220 (2005).

The Guidelines

Mr. Lee agrees with Probation's calculations, except for a money laundering enhancement for sophisticated means. The offense level for the prostitution and money laundering group should be 16, not 18. This 2-level dispute does not impact the combined total offense level, which is 19 regardless, with a guideline range of 30-37 months.

No sophisticated means enhancement was applied to Junmyung Lee, despite Probation advocating for it. The government opposed the enhancement, as it does here. Probation's finding of "sophisticated" laundering is based upon three factors, each unwarranted. First, Probation notes that cash was deposited into multiple bank

accounts. Mr. Lee put money into his own personal bank account; sometimes into his wife's account; sometimes into a business account. This is simply not a complex scheme requiring deep analysis to decipher. Second, Probation notes that cash was sometimes converted to money orders, asserting that this maneuver helped the funds appear legitimate. There is no reason that a money order would appear more legitimate than cash to law enforcement. Rather than hiding monies, a money order creates an additional paper trail beyond cash deposits and withdrawals. The transaction, which could be done by a child, consists of handing cash to a teller and receiving a money order. This is not what the Sentencing Commission had in mind when finding that sophistication deserves an enhanced penalty. Finally, Probation notes that prostitution money was "co-mingled" into accounts with money from other sources, suggesting that for a defendant to be identified as an unsophisticated money launderer, they would need to keep illegal monies in a designated account or not deposit the money into a bank to begin with. If depositing dirty money into an account containing clean money constituted sophistication, the enhancement would become the rule, rather than the exception.

      The adjusted offense level for Count III, wire fraud, is 23. While the calculation is accurate, the Court should recognize that the loss amount of $569,323 barely falls into the loss range of $550,000 - $1,500,000. Further, while this amount represents the government's loss, it does not represent Mr. Lee's profit. Mr. Lee acknowledges responsibility for the loan applications and the totals paid out. Nonetheless, the Court should be aware that he was recruited by two men to file the loan applications, and a substantial percentage of the monies went to them. The Statement of Offense Conduct in the Presentence Report provides some indication of this. For example, PPP loan #1 resulted

in a loan of $125,000. The government has identified transfers to Mr. James and his wife totaling about $28,000. Cash withdrawals of $45,000 were split; they did not go exclusively to Mr. Lee. PPP loan #5 resulted in a loan of $21,000; the government has identified transfers to Mr. James totaling $13,500.

Mr. Lee agrees with the government's estimate of his receipt of $63,000 for his role in the prostitution business. The government calculated the payments to Junmyung Lee at about $200,000. The total amount of money that Mr. Lee made from both the fraudulent loans and prostitution was more than the $200,000 that Junmyung Lee made, but not substantially more, and was much less than the loan payments, and much less than the $550,000 low-end of the loss range he falls into.

Whether the prostitution and money laundering group counts for 16 or 18 levels, it is within 9 of the adjusted wire fraud level of 23. Therefore, regardless of the sophisticated means enhancement, this group yields a multiple count adjustment of 0.5 units, and the same 1-level increase pursuant to §3D1.4. Probation's draft report calculates the total offense level as 21 because it does not include a 2-level zero-point offender reduction per §4C1.1, which the government and Probation agree should apply. At level 19, the guideline range is 30-37 months. If the loss amount was $19,323 less, the range would drop to 24-30 months. If the loss amount was $930,000 more, the guideline range would be unchanged.

Junmyung Lee's 12-month sentence represented 57% of the 21-month low-end of his guideline. A similar calculation would result in a sentence of 17 months when applied to a 30-month low-end, and about 13 ½ months when applied to 24 months. Mr. Lee has been incarcerated since November 8, 2023, about a week shy of 19 months.

3

<ins>Mr. Lee's Background</ins>

Mr. Lee emigrated to the United States in the mid-80s at age 26, with his parents and siblings. He married soon after his arrival. He became a naturalized citizen about ten years later.

He built his own business in clothing manufacturing and maintained the business for twenty years. During the later years of operation, the business grew increasingly unprofitable, and Mr. Lee went bankrupt and closed the business in 2010. After that, his wife was the sole wage-earner. Mr. Lee became a stay-at-home father, playing a larger role in raising their children. This change created both financial pressures on the family and emotional pressure on Mr. Lee. The failure of the business and the burden this placed on his wife was very difficult for him to deal with.

Mr. Lee became part of the brothel enterprise and generated the fraudulent loan applications in his mid-60s, a very late age to start criminal involvement. It was not because of any desire to turn to a life of crime. He did not go looking for these opportunities. But when they were proposed, he found them difficult to resist. They provided a way for him to contribute to the family's income and ease the pressures he felt responsible for placing on his wife. For a man who had built his own business, and then felt like a failure when that business collapsed, it offered a way to make amends.

The shame that Mr. Lee felt after the failure of his business, was nothing compared to the shame that he feels now. Mr. Lee's remorse is not about regret over his getting caught. It is about genuine religious convictions, and regret that he did not live up to those convictions, dishonoring himself and his family. There is no sentence that could have a greater deterrent effect than the shame he lives with.

Letters from his wife, children, and grandchildren are provided at Attachment 1. His detention on the opposite coast from them has been a unique burden. He is asking the Court to allow him to return to his family.

## Conclusion

For these reasons, the Court should find that a sentence of time served achieves the purposes of sentencing.

> JAMES LEE
> By his Attorney,
>
> /s/ *Keith Halpern*
> Keith Halpern, BBO # 545282
> 572 Washington Street, Suite 19
> Wellesley, MA 02482

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 19, 2025.

/s/ *Keith Halpern*